Eugene M. LONSDALE, Patsy R. Lonsdale, his wife in Propria Persona Sui Juris, Plaintiffs–Appellants,

v.

UNITED STATES of America and Does 1 through 100, Defendants–Appellees.

No. 90–2113.

United States Court of Appeals, Tenth Circuit.

Submitted on the Briefs.*

Decided Nov. 20, 1990.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Eugene M. Lonsdale and Patsy R. Lonsdale, pro se.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene and Joan I. Oppenheimer, Attys., Tax Div., Dept. of Justice, Washington, D.C., William L. Lutz, U.S. Atty., of Counsel, for defendants-appellees.

Before ANDERSON, BALDOCK and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Eugene M. Lonsdale, Sr. and Patsy R. Lonsdale commenced this suit against the United States [1] seeking to prevent Internal Revenue Service levies on their wages and

---

1. The complaint also referred to "Does 1 through 100". However, it pleads no cognizable cause of action against any individual, and seeks no relief against any individuals with the sole exception of a requested injunction against the United States and "its representatives and its agents and agencies from their unlawful Unconstitutional seizing of the Plaintiff(s) LABOR PROPERTY ..." R.Vol. I, Tab 1 at 13–14. Such claims against individuals in their official capacities are claims against the United States. Accordingly, we treat this action as one solely against the United States.

a credit union account, for unpaid income taxes on wages for the years 1981 through 1987. The complaint, styled as a quiet title action, asserts that the government has no power to tax wages and, therefore, lacks the right to collect unpaid income taxes assessed against the Lonsdales. It further asserts that the Internal Revenue Service has no power to impose levies because orders delegating such power were not published in the Federal Register as required by law, and because the relevant IRS forms do not carry an Office of Management and Budget control number allegedly as required by the Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501–3520.

The government moved to dismiss on jurisdictional grounds, and, in the alternative, for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The district court granted the motion without specifying the basis upon which it relied. The Lonsdales' subsequent motion for reconsideration was denied. On appeal the Lonsdales reassert the arguments which they made in the district court and raise other issues as well. However, because the dismissal below was necessarily based upon the complaint itself, we address only those matters pled in the complaint. For the reasons stated below, we affirm the dismissal of the Lonsdales' action.

## I.

## JURISDICTION

We agree with the government that this suit is barred by the Anti–Injunction Act, 26 U.S.C. § 7421(a), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person...." The statute excepts petitions to the United States Tax Court for a redetermination of a proposed deficiency, 26 U.S.C. §§ 6212(a) and (c), 6213(a), and certain civil suits in the district court, 26 U.S.C. §§ 7426(a) and (b)(1), 6672(b), 6694(c) and 7429(b). Taxpayers may also sue in the proper district court or the United States Claims Court for a refund of taxes

paid. 26 U.S.C. § 7422. A judicial exception to the act permits an injunction

if the taxpayer demonstrates that: 1) under no circumstances could the government establish its claim to the asserted tax; and 2) irreparable injury would otherwise occur. *Bob Jones University v. Simon,* 416 U.S. 725, 737, 94 S.Ct. 2038, 2046 [40 L.Ed.2d 496] (1974); *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 6–8, 82 S.Ct. 1125, 1128–29 [8 L.Ed.2d 292] (1962).

*Souther v. Mihlbachler,* 701 F.2d 131, 132 (10th Cir.1983).

The Lonsdales' complaint states that it seeks injunctive and declaratory relief as well as a refund of amounts collected pursuant to the levies in question. But their complaint is essentially an attempt to prevent the collection of assessed taxes by challenging the underlying tax assessments. That challenge violates the Anti–Injunction Act on its face. The ways to challenge assessments and collections are set forth above. This suit is not one of them.

The Lonsdales seek to avoid the jurisdictional restrictions of the Anti–Injunction Act by characterizing their action as one to quiet title and alleging jurisdiction under 28 U.S.C. § 2410(a) which provides in relevant part:

[T]he United States may be named a party in any civil action or suit in any district court ... having jurisdiction of the subject matter to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien.

We reject the proposition that 28 U.S.C. § 2410 provides jurisdiction for an action essentially contesting liability for assessed taxes, where the taxpayers have had the elective opportunity described above—whether or not used—to seek a redetermination in the tax court or a refund of contested payments in the district court. The Anti–Injunction Act begins with the phrase "no suit."

The intent behind the statute is the protection of the government's need to assess and collect taxes as expeditiously as

possible without preenforcement judicial interference and to require that disputed sums of taxes due be determined in suits for refund.

*Lowrie v. United States,* 824 F.2d 827, 830 (10th Cir.1987).

Thus, this and other courts have rejected attempts by taxpayers to invoke the waiver of sovereign immunity for the purpose of circumventing the time honored "pay first, litigate later" rule, by framing their contest of the Government's tax assessment or collection actions in the guise of a quiet title action. *See Schmidt v. King,* 913 F.2d 837 (10th Cir.1990); *Pollack v. United States,* 819 F.2d 144 (6th Cir.1987); *Laino v. United States,* 633 F.2d 626, 633 n. 8 (2d Cir.1980); *Mulcahy v. United States,* 388 F.2d 300 (5th Cir.1968); *Falik v. United States,* 343 F.2d 38 (2d Cir.1965); *Pipola v. Chicco,* 274 F.2d 909, 913–914 (2d Cir.1960); *Quinn v. Hook,* 231 F.Supp. 718, 720 (E.D. Pa.1964), *aff'd per curiam,* 341 F.2d 920 (3d Cir.1965); *McCann v. United States,* 248 F.Supp. 585 (E.D.Pa.1965); *Broadwell v. United States,* 234 F.Supp. 17 (E.D.N.C. 1964), *aff'd,* 343 F.2d 470 (4th Cir.1965), *cert. denied,* 382 U.S. 825, 86 S.Ct. 57, 15 L.Ed.2d 70 (1965); *Shaw v. United States,* 321 F.Supp. 1267 (D.Vt.1970), *aff'd,* 71–1 U.S.T.C., para. 9220 (2d Cir.1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1378, 28 L.Ed.2d 650 (1971). The bulk of the complaint in this case, which simply contests the assessment of income taxes, falls within the category and the prohibitions described.

■ The Lonsdales argue that § 2410 at least confers jurisdiction upon the part of their suit that challenges the levies in question on the grounds that the Internal Revenue Service has no lawful delegation of authority to issue levies, and that the Paperwork Reduction Act has been violated. We have recognized that "[w]hen the taxpayer challenges the procedural regularity of [a] tax lien and the procedures used to enforce the lien, and not the validity of the tax assessment, sovereign immunity is

waived." *Schmidt v. King,* 913 F.2d at 839; *National Commodity and Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1246, n. 6 (10th Cir.1989).[2] But such waiver must be narrowly construed, *id.,* and whatever narrow jurisdiction may lie under § 2410 does not extend to an omnibus challenge to the authority of the Internal Revenue Service to function. *See generally United States v. Morrison,* 247 F.2d 285, 290 (5th Cir. 1957) (the primary application of Section 2410(a)(1) is to allow joinder of the Government to settle "the traditional controversy in which a private party asserts an ownership which is superior to the claimed lien of the United States Government."); *Quinn v. Hook,* 231 F.Supp. at 720 ("the purpose of the amendment, as clearly stated in the House and Senate reports, is to permit the United States to be made a party defendant in cases involving foreclosure of mortgages or liens on personal property and to provide a method to clear real estate titles of questionable or valueless Government liens.").

The Lonsdales' argument concerning the regularity of the levies must be tested under the judicial exception to the Anti–Injunction Act referred to above, relating to cases where it is clear that under no circumstance could the government ultimately prevail. For practical purposes, the Lonsdales would face the same burden with respect to these purely legal questions if jurisdiction was founded on § 2410 rather than on the judicial exception to the Anti–Injunction Act, but here they must also show irreparable injury. In any event, for the reasons set forth below, we reject the Lonsdales' delegation of authority and Paperwork Reduction Act claims as a matter of law. It follows that the exception to the Anti–Injunction Act cannot apply to avoid the jurisdictional bar here.

■ Finally, the Lonsdales cite numerous other statutes in their complaint as conferring jurisdiction—28 U.S.C. §§ 1331, 1340, 1361, 2463; 5 U.S.C. §§ 301, 556(d), 558, 559, 701–706; 26 U.S.C. §§ 7214(a)(1), (2) and (7) (R.Vol. I, Tab 1 at 3). None of

**2.** Other circuits have permitted challenges to the validity of IRS levies and sales of assets to be brought under § 2410, in limited circumstances.

*See Aqua Bar & Lounge, Inc. v. United States,* 539 F.2d 935 (3rd Cir.1976); *Elias v. Connett,* 908 F.2d 521 (9th Cir.1990).

those statutes waive the government's sovereign immunity here. Sovereign immunity is not waived by general jurisdictional statutes such as 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1340 (jurisdiction over actions arising under the Internal Revenue Code), and 28 U.S.C. § 1361 (action to compel a government officer to perform his duty). *See Coggeshall Development Corp. v. Diamond*, 884 F.2d 1, 3–4 (1st Cir.1989); *Estate of Watson v. Blumenthal*, 586 F.2d 925, 932 (2d Cir.1978); *Carelli v. Internal Revenue Service*, 668 F.2d 902, 904 (6th Cir.1982). Rather, the taxpayer must find an explicit waiver of sovereign immunity. Section 2463 of Title 28, which provides that property taken or detained under any federal revenue law shall be subject only to the orders of the courts of the United States having jurisdiction thereof, similarly does not constitute the necessary explicit waiver of sovereign immunity. *See Nehf v. United States*, 302 F.Supp. 356, 359 (N.D.Ill.1969). Furthermore, § 2463 was not intended to confer jurisdiction on the federal district courts over property levied upon and seized under the Internal Revenue Laws. *Morris v. United States*, 303 F.2d 533, 535 (1st Cir.), *cert. denied*, 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 66 (1962). *See also New Hampshire Fire Insurance Co. v. Scanlon*, 362 U.S. 404, 408, 80 S.Ct. 843, 846, 4 L.Ed.2d 826 (1960).

Most of the provisions of the Administrative Procedure Act cited by the Lonsdales —5 U.S.C. §§ 556(d), 558, 559, 701, 703–706 —do not deal with jurisdiction or waiver of sovereign immunity. Nor does § 7214 of the Internal Revenue Code, which provides criminal penalties for unlawful acts of revenue officers or agents.

■ Nor does 5 U.S.C. § 702 waive sovereign immunity here. The Administrative Procedure Act itself is not a grant of jurisdiction for the review of agency actions. *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The language of this section and the amendments thereto merely suggest that sovereign immunity will not be a defense in an action in which jurisdiction already exists.

*Watson v. Blumenthal*, 586 F.2d 925, 932 (2d Cir.1978); *Lee v. Blumenthal*, 588 F.2d 1281, 1283 (9th Cir.1979). Section 702 by its very terms disclaims any "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702(2). As explained above, Congress has provided express methods by which proposed deficiencies, assessments, or collections of taxes may be challenged, and express prohibition in the Anti–Injunction Act, 26 U.S.C. § 7421(a) against suits brought for the purpose of restraining the assessment or collection of any tax except in the prescribed manner.

II.

FEDERAL REGISTER ACT, FOIA, PAPERWORK REDUCTION ACT, AND SIMILAR CHALLENGES TO AUTHORITY OF IRS EMPLOYEES

The Lonsdales argue that the IRS lacked the authority to issue summons or impose levies or liens because the Treasury Department Orders delegating that authority to the Commissioner of the IRS were never published in the Federal Register, as required by the Federal Register Act, 44 U.S.C. §§ 1501–1511 ("FRA") and the Administrative Procedure Act, 5 U.S.C. §§ 552, *et seq.*, ("APA"), and because the relevant IRS forms did not contain an Office of Management and Budget Control Number allegedly as required by the Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501–3520.

■ We easily dispose of the Lonsdales' claim under the Paperwork Reduction Act. The Act provides in pertinent part:

... no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director [of the Office of Management and Budget], or fails to state that such request is not subject to this chapter.

44 U.S.C. § 3512. Pursuant to 44 U.S.C. § 3518(c)(1)(B)(ii) "this chapter does not apply to the collection of information . . . during the conduct of . . . an administrative action or investigation involving an agency against specific individuals or entities." We agree with those courts that have relied upon section 3518(c)(1)(B)(ii) to hold that the Paperwork Reduction Act is inapplicable to "information collection request" forms issued during an investigation against an individual to determine his or her tax liability. *See Neumann v. United States,* 1990 WL 209631, 1990 U.S.Dist. LEXIS 8312 (W.D.Mich.1990); *United States v. Nat'l Commodity and Barter Assoc.,* 1990 WL 85905, 1990 U.S.Dist. LEXIS 5177 (D.Colo.1990); *Van Sant v. United States,* 1990 WL 21279, 1990 U.S. Dist. LEXIS 2843 (D.Colo.1990), *aff'd* 1990 U.S.App. LEXIS 14191 (10th Cir.); *United States v. Particle Data, Inc.,* 634 F.Supp. 272, 275–76 (N.D.Ill.1986); *Snyder v. Internal Revenue Service,* 596 F.Supp. 240, 250 (N.D.Ind.1984); *Cameron v. Internal Revenue Service,* 593 F.Supp. 1540, 1556 (N.D. Ind.1984), *aff'd* 773 F.2d 126 (7th Cir.1985); *see also Hatcher v. United States,* 733 F.Supp. 218, 221 (M.D.Pa.1990) ("While Hatcher may be correct that the Act states that nobody may be punished for failure to file an 'information collection request' which does not comply with the Act, the Act does not allow an individual to ignore a summons."). Thus, any alleged failure to comply with the Paperwork Reduction Act provides no basis for avoiding the levies imposed on the Lonsdales' wages and credit union account.

■ The Lonsdales next argue that the failure to publish Treasury Department Orders (TDOs) 150–37 (1955) and 150–10 (1982) in the Federal Register rendered all action taken by the IRS against them unlawful. TDO 150–37 and TDO 150–10 delegated authority from the Secretary of the Treasury to the Commissioner of the IRS to take various actions to administer and enforce the Internal Revenue laws.[3] Apart from the publication argument, the Lonsdales do not appear to challenge the existence of that delegation authority, nor do they specifically challenge the validity of any subdelegations of authority from the Commissioner to subsidiary officials. They challenge only the validity of the TDOs because they were unpublished. We reject that argument.

Under section 1505(a) of the FRA, the following must be published in the Federal Register:

> (1) Presidential proclamations and Executive orders, except those not having general applicability and legal effect . . .
>
> (2) documents or classes of documents that the President may determine from time to time have general applicability and legal effect; and
>
> (3) documents or classes of documents that may be required so to be published by Act of Congress.

44 U.S.C. § 1505(a). The Act further provides that "every document or order which prescribes a penalty has general applicability and legal effect." *Id.* 44 U.S.C. § 1507 provides:

> A document required by section 1505(a) of this title to be published in the Federal Register is not valid as against a person who has not had actual knowledge of it until the duplicate originals or certified copies of the document have been filed with the Office of the Federal Register and a copy made available for public

---

**3.** TDO 150–10, which superseded TDO 150–37, is as follows:
DATE: April 22, 1982   *NUMBER:* 150–10
*SUBJECT:* Delegation—Responsibility for Internal Revenue Laws
By virtue of the authority vested in me as Secretary of the Treasury, including the authority in the Internal Revenue Code of 1954 and Reorganization Plan No. 26 of 1950, it is hereby ordered:
1. *The Commissioner of Internal Revenue* shall be responsible for the administration and enforcement of the Internal Revenue laws.

2. Commissioner Order No. 190 and General Counsel Order No. 4 state the powers delegated to the Chief Counsel for the Internal Revenue Service.
3. All outstanding orders and delegations of authority relating to the above are modified accordingly.
This order supersedes Treasury Department Order No. 150–37 dated March 17, 1955.
/s/ Donald T. Regan
Secretary of the Treasury

inspection as provided by section 1503 of this title.

The TDOs are not "Presidential proclamations" or "Executive orders," and they are not documents that the President has determined to have general applicability and legal effect. Subsection (3), "documents that may be required so to be published by Act of Congress," is only applicable if Congress has prescribed publication elsewhere. The Administrative Procedure Act is the only apparent source of such a prescription. As shown by our discussion below the APA contains no requirement to publish TDO's; accordingly, we hold that the FRA did not require publication of TDO 150-37 or 150-10. *See Murdock v. United States,* 1990 WL 120664, 1990 U.S.Dist. LEXIS 9269 (D.Utah 1990); *United States v. Nat'l Commodity and Barter Assoc.,* 1990 WL 85905, 1990 U.S.Dist. LEXIS 5177 (D.Colo.1990); *Van Sant v. United States,* 1990 WL 21279, 1990 U.S.Dist. LEXIS 2843 (D.Colo.1990) ("A Treasury Department order—such as the one at issue in this case— need not be published in the Federal Register.") (citing 44 U.S.C. § 1505(a)); *Reimer v. United States,* 1990 WL 85686, 1990 U.S.Dist. LEXIS 1167 (D.Haw.1990) ("the court is not convinced that such publication [of TDO 150-37] is required by the statute cited [44 U.S.C. § 1505(a) ]"); *but see Hatcher v. United States,* 733 F.Supp. 218 (M.D.Pa.1990).

The Lonsdales next argue that section 552 of the APA, more commonly known as the Freedom of Information Act ("FOIA") required publication of TDO 150-37 and TDO 150-10. The FOIA provides in pertinent part:

Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization ...

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure ...

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency;

. . . . .

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

5 U.S.C. § 552(a)(1). We conclude, as have other courts, that the APA does not require publication of TDOs such as 150-37 and 150-10 which internally delegate authority to enforce the Internal Revenue laws. *See United States v. Goodman,* 605 F.2d 870, 887-88 (5th Cir.1979) (court held that unpublished delegation of authority from Attorney General to Acting Administrator of the DEA did not violate either the FRA or the APA, relying on APA cases to the effect that internal delegations of authority need not be published and do not "adversely affect" the public.); *Hogg v. United States,* 428 F.2d 274, 280 (6th Cir.1970) ("We hold that the Administrative Procedure Act does not require that all internal delegations of authority from the Attorney General must be published in order to be effective."), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 805 (1971); *Neumann v. United States,* 1990 WL 209631, 1990 U.S.Dist. LEXIS 8312 (W.D.Mich.1990) (applying 5 U.S.C. § 552(a)(1) the court noted that "[a]n internal delegation of administrative authority does not adversely affect members of the public and need not be published in the Federal Register to be valid."); *United States v. McCall,* 727 F.Supp. 1252 (N.D.Ind.1990) ("It is well-settled that 'rules of agency organization, procedure, or practice' need not be published to be effective. *D & W Food Centers, Inc. v. Block,* 786 F.2d 751 (6th Cir.1986); 5 U.S.C. § 553(b)(3)(A). The court finds the delegation orders at issue here to be such rules of internal agency procedure, obviating their publication in the Federal Register.").

Finally, the Lonsdales raise arguments regarding the alleged nonpublication of the central organization of the Internal Revenue Service by the Treasury Department, and failure to publish IRS forms such as form 1040. These arguments are specious. At the very least, taxpayers have actual notice of form 1040 and similar forms; and descriptions permitting an understanding of the organization of the Internal Revenue Service are published by statute and in the Code of Federal Regulations. *See, e.g.*, 26 U.S.C. §§ 7801–7810; 26 C.F.R. Part 600, *et seq.* The tax laws, including their administration and enforcement by the Internal Revenue Service, a division of the Department of the Treasury, are probably the best publicized and indexed area of federal law, consisting of a separate title of the United States Code, Title 26, and the Code of Federal Regulations, Title 26 (spanning eighteen volumes), plus extensive commercial compilations and explanations. For example, Vol. 12 CCH Federal Tax Reporter, ¶ 44–254–44,920, sets out IRS organization, practice and procedure in great detail.

In short, the Lonsdales' publication arguments are utterly meritless.

### III.

### SANCTIONS

■ The government has sought sanctions against the Lonsdales, and they have had an opportunity to respond. *See Braley* *v. Campbell*, 832 F.2d 1504 (10th Cir.1987). With respect to the Lonsdales' claims relating to delegations of authority and the Paperwork Reduction Act and similar arguments, we deny the request for sanctions. Although the issues are meritless, we cannot say that the law with respect to them is so well settled, at least prior to this case in this circuit, that they can be deemed frivolous where pro se litigants are concerned; and the record does not indicate that the Lonsdales have previously attempted to litigate these points.

However, as indicated above, the bulk of the Lonsdales' suit constitutes a refrain about the federal government's power to tax wages or to tax individuals at all, which the Lonsdales have been pursuing for at least fourteen years. *See Lonsdale v. Smelser*, 709 F.2d 910 (5th Cir.1983); *Lonsdale v. Commissioner*, 661 F.2d 71 (5th Cir.1981), *aff'g* 41 T.C.M. (CCH) 1106 (1981); *Lonsdale v. Smelser*, 553 F.Supp. 259 (N.D.Tex.1982); *Lonsdale v. Egger*, 525 F.Supp. 610 (N.D.Tex.1981).[4] After exercising considerable patience and tolerance, the Fifth Circuit finally imposed money sanctions totaling $1,445.55 on the Lonsdales for their repeated attempt to relitigate issues already adjudicated by the courts. *Lonsdale v. Smelser*, 709 F.2d at 911. Furthermore, since this circuit has made itself clear on these and similar issues numerous times, the Lonsdales cannot by any stretch of the imagination assert

---

**4.** The following quote is a representative sample of assertions repeated over and over in the complaint:

The Defendant United States through its Internal Revenue Service employees erroneously illegally unlawfully and unConstitutionally made an Amendment 4 seizure of the Plaintiff(s) PROPERTY PERSONAL AND REAL in the form of their LABOR PROPERTY/LABOR SERVICES PROPERTY and their WAGE COMPENSATION PAYCHECK MONEY INCOME SPECIALIZED TYPE OF PROPERTY they receive directly from their OCCUPATION OF COMMON RIGHT by their LABOR PROPERTY and/or LABOR SERVICES PROPERTY the United States tax laws at the Federal Code of Tax Regulations at 26 C.F.R. 301.6331–1 and TITLE 26 U.S.C. Sec. 6331 since they have no lawful color of Constitutional taxing and tax collecting authority and jurisdiction to apply any Article 1, Sec. 8 INDIRECT EXCISE TAXES upon the Plaintiffs OCCUPATION OF COMMON RIGHT, their LABOR PROPERTY, their LABOR SERVICES PROPERTY, and their WAGE COMPENSATION PAYCHECK MONEY INCOME SPECIALIZED TYPE OF PROPERTY WITHOUT APPORTIONMENT., or with any 16th Amendment INDIRECT EXCISE INCOME TAX upon the Plaintiff(s) OCCUPATION OF COMMON RIGHT, their LABOR PROPERTY, their LABOR SERVICES PROPERTY, or their WAGE COMPENSATION PAYCHECK MONEY INCOME SPECIALIZED TYPE OF PROPERTY WITHOUT APPORTIONMENT., or with any 1939 PUBLIC EMPLOYEE SALARY TAX ACT "WITHHOLDING" DIRECT TAX which pertains strictly to federal government officers, employees, and elected officials., and; which is absolutely unConstitutional as shown by SECTION # 4 of the ACT and TITLE 4 U.S.C. Sec. 111., without APPORTIONMENT.

that their arguments regarding the taxability of wages have any support in this circuit. *See United States v. Christensen,* 1990 U.S.App. LEXIS 17594 (10th Cir.1990); *United States v. Mann,* 884 F.2d 532 (10th Cir.1989); *United States v. Dawes,* 874 F.2d 746, 750–51 (10th Cir.1989); *Charczuk v. Commissioner,* 771 F.2d 471, 472–73 (10th Cir.1985); *United States v. Stillhammer,* 706 F.2d 1072, 1077–78 (10th Cir. 1983).

As the cited cases, as well as many others, have made abundantly clear, the following arguments alluded to by the Lonsdales are completely lacking in legal merit and patently frivolous: (1) individuals ("free born, white, preamble, sovereign, natural, individual common law 'de jure' citizens of a state, etc.") are not "persons" subject to taxation under the Internal Revenue code; (2) the authority of the United States is confined to the District of Columbia; (3) the income tax is a direct tax which is invalid absent apportionment, and *Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, *modified,* 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), is authority for that and other arguments against the government's power to impose income taxes on individuals; (4) the Sixteenth Amendment to the Constitution is either invalid or applies only to corporations; (5) wages are not income; (6) the income tax is voluntary; (7) no statutory authority exists for imposing an income tax on individuals; (8) the term "income" as used in the tax statutes is unconstitutionally vague and indefinite; (9) individuals are not required to file tax returns fully reporting their income; and (10) the Anti–Injunction Act is invalid.

To this short list of rejected tax protester arguments we now add as equally meritless the additional arguments made herein that (1) the Commissioner of Internal Revenue and employees of the Internal Revenue Service have no power or authority to administer the Internal Revenue laws, including power to issue summons, liens and levies, because of invalid or nonexistent delegations of authority, lack of publication of delegations of authority in the Federal Register, violations of the Paperwork Re-

duction Act, and violations of the Administrative Procedure Act, including the Freedom of Information Act; and (2) tax forms, including 1040, 1040A, 1040EZ and other reporting forms, are invalid because they have not been published in the Federal Register.

■ We are confronted here with taxpayers who simply refuse to accept the judgments of the courts. As the Lonsdales already know from their experiences in the Fifth Circuit, the courts are not powerless in these circumstances and are not required to expend judicial resources endlessly entertaining repetitive arguments. Nor are opposing parties required to bear the burden of meritless litigation. *See United States v. Christensen,* 1990 U.S.App. LEXIS 17594; *Charczuk v. Commissioner,* 771 F.2d at 474–76; *Van Sickle v. Holloway,* 791 F.2d 1431, 1437 (10th Cir.1986). *See also Tripati v. Beaman,* 878 F.2d 351, 353 (10th Cir.1989). This case is similar to the situation which we recently considered in *United States v. Christensen,* 1990 U.S. App. LEXIS 17594, in which we imposed sanctions. 1990 U.S.App. LEXIS 17666. Sanctions are equally appropriate here and are imposed as follows: (1) double costs; and (2) $500.00 as an award to the government to defray a portion of its legal costs in responding to the frivolous issues raised in the Lonsdales' complaint. The government is directed to present a properly itemized statement of recoverable costs on appeal within 10 days.

## CONCLUSION

We have considered all of the arguments made by the Lonsdales relative to issues raised in their complaint and reject them all. For the reasons stated above, the judgment of the district court dismissing the action in this case is AFFIRMED, and sanctions are imposed.